**UNITED STATES of America,**
**Plaintiff–Appellee,**

**v.**

**Francisco MATEO–MENDEZ,**
**Defendant–Appellant.**

No. 99–50394.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 5, 2000

Filed June 21, 2000

Leslie S. Daniels (argued), Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellant.

Bruce R. Castetter and Kevin J. Kelly (argued), Assistant United States Attorneys, San Diego, California, for the plaintiff-appellee.

Before: REINHARDT and O'SCANNLAIN, Circuit Judges, and SCHWARZER,* Senior District Judge.

O'SCANNLAIN, Circuit Judge:

We must decide whether a "Certificate of Nonexistence of Record" issued on behalf of the Attorney General was appropriately admitted into a criminal trial for illegal reentry by an alien as evidence of lack of permission despite the fact that the document was not executed by an officer to whom the Attorney General had expressly delegated such authority.

I

On July 6, 1998, an agent of the U.S. Border Patrol who was patrolling near Jamul, California, discovered Francisco Mateo–Mendez ("Mateo") and two other individuals hiding under a large pipe under the road. Border patrol agents at the checkpoint to which Mateo was taken discovered that Mateo had an extensive criminal history, including prior convictions for rape and burglary, and had been previously deported. Mateo admitted at that time that he was an illegal alien and that he had entered without inspection the day before.

One week later, Mateo was indicted on one count of illegal reentry in violation of 8 U.S.C. § 1326. At Mateo's jury trial, the government offered a "Certificate of Nonexistence of Record" ("CNER"), executed on July 23, 1998, by Karen A. Malveaux Joy. Joy certified that she was a "management analyst" in the "Records Services Branch, Office of Records" of the Immigration and Naturalization Service ("INS"), that she was authorized under Section 290(d) of the Immigration and Nationality Act and 8 C.F.R. § 103.7(d)(4) "to certify the nonexistence in the records of the [INS] of an official … record pertaining to a specified person or subject," and that she had failed to discover any "evidence of the filing of an application for permission to reapply for admission to the United States" from Mateo. This CNER, the parties agree, bore both the signature of Ms. Malveaux Joy and the seal of the INS. Mateo objected to the admission of the CNER, however, on the ground, among others, that it had not been properly authenticated because the individual who executed the CNER was not among the class of individuals to whom the Attorney General had expressly delegated the authority to make such a certification. The district court overruled Mateo's objections, and Mateo was convicted.

The district court granted a two-level downward departure to Mateo for acceptance of responsibility pursuant to section 3E1.1(a) of the United States Sentencing Guidelines ("U.S.S.G.") because Mateo "timely provide[d] complete information to the government concerning his own involvement in the offense." The district court concluded that this departure left Mateo with an offense level of twenty-two and sentenced Mateo to a prison term of ninety-four months.

Mateo timely appealed both his conviction and his sentence. He argues, first, that the CNER should not have been admitted and thus that there was insufficient evidence to support his conviction of illegal reentry and, second, that the district court erred in failing to reduce his sentence with an additional one-level downward departure under U.S.S.G. § 3E1.1.

II

We first address Mateo's assertion that the CNER should not have been admitted into evidence at his trial. The parties differ on the standard under which

* The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

this court should review the district court's admission of the CNER. Mateo, citing *United States v. Walker,* 117 F.3d 417, 419 (9th Cir.1997) ("The District Court's construction or interpretation of the Federal Rules of Evidence is a question of law subject to de novo review."), contends that the appropriate standard is de novo. The government, however, relies on our decision in *United States v. Wood,* 943 F.2d 1048, 1055 (9th Cir.1991), and contends that we should review the district court's ruling only for an abuse of discretion.

In *United States v. Owens,* 789 F.2d 750, 753 (9th Cir.1986), *rev'd on other grounds,* 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988), we emphasized that the selection of the applicable standard of review is contextual: The de novo standard applies when issues of law predominate in the district court's evidentiary analysis, and the abuse-of-discretion standard applies when the inquiry is "essentially factual."

> The district court's construction of the Federal Rules of Evidence is a question of law subject to de novo review. Questions of admissibility of evidence which involve factual determinations, rather than questions of law, are reviewed for abuse of discretion. When a mixed question of law and fact is presented, the standard of review turns on whether factual matters or legal matters predominate. If an "essentially factual" inquiry is present, or if the exercise of the district court's discretion is determinative, then we give deference to the decision of the district court; otherwise, we conduct a de novo review.

*Id.* (citations omitted); *see also United States v. Chu Kong Yin,* 935 F.2d 990, 994 (9th Cir.1991) (quoting *Owens* ).

In the evidentiary ruling that is the subject of the instant appeal, neither party raises a substantial issue pertaining to the existence or characterization of facts, and the district court did not seem to rely on any controverted (or credibly controvertible) facts in rendering its decision. The issue is thus primarily of law, and the standard of review is thus de novo.

## A

Mateo was indicted and tried for violating 8 U.S.C. § 1326. That provision makes it a criminal offense punishable by up to ten years in prison for a person, after his removal from the United States, either to be found or to attempt to enter therein "without the permission of the Attorney General." 8 U.S.C. § 1326(b)(3)-(4). "To establish a case of attempted illegal reentry after deportation, the government must prove that the Attorney General had not consented to the alien's application for reentry." *United States v. Blanco–Gallegos,* 188 F.3d 1072, 1077 (9th Cir.1999). In order to carry its burden, the government introduced the CNER.

Mateo argues that the CNER should not have been admitted and thus that the government has failed to introduce sufficient evidence to support his conviction. Mateo specifically objects to the admission of the CNER because it was not properly authenticated pursuant to Fed.R.Evid. 902 and thus was admitted despite failing to comply with the requirements of Fed. R.Evid. 803 (hearsay) and 401 (relevance) and the Confrontation Clause of the Sixth Amendment.

Notwithstanding the variety of his objections, Mateo concedes that his argument hinges in full on the alleged authentication failure. At any rate, it is plain that Mateo's other objections are weightless in the face of the proper admission of the CNER as a public document under seal pursuant to Rule 902.

With regard to the hearsay objection, Rule 803 expressly provides, inter alia, that "a certification in accordance with Rule 902 ... that diligent search failed to disclose the record" offered for the purpose of "prov[ing] the absence of [the] record" is "not excluded by the hear-

say rule." Fed.R.Evid. 803.10. Mateo argues that Rule 803.10 (which requires only compliance with Rule 902) imports requirements of "trustworthiness" and "duty imposed by law" from Rule 803.8 (which addresses not official certifications of the *absence* of public records but public records themselves). Neither legal authority nor logic supports Mateo's effort to analogize the subjects of Rule 803.10 and Rule 803.8. Mateo relies on two observations: (1) both rules contain the phrase "public record[ ]" and (2) both "are premised on the principles of necessity and trustworthiness." Neither of these observations, however, compels reliance on factors listed under Rule 803.8 in determining the admissibility of documents that satisfy Rule 803.10. The fact that Rule 803.10 shares a phrase with Rule 803.8 cannot sensibly be understood to overwhelm the plain meaning of Rule 803.10, and nothing in the observation that Rule 803.10 derives from concern for "trustworthiness" supports the inference that the documents whose admission that rule allows must be found "trustworthy" on precisely the same bases that Rule 803.8 contemplates. If the CNER satisfies Rule 902, it satisfies ipso facto the exception to the hearsay rule in Rule 803.10.

█ Regarding Mateo's relevance objection, our decision in *Blancos–Gallegos,* 188 F.3d at 1072, indicating that a CNER from the INS is sufficient evidence to support a jury's conclusion that the Attorney General has not consented to an alien's reentry, rebuts Mateo's argument that the CNER is not "relevant" under Rule 401. That rule indicates that evidence is "relevant" if it enhances the probability "of any fact that is of consequence to the determination of the action." *Id.* The CNER must satisfy this standard if, as settled in *Blanco–Gallegos,* it is adequate to support a jury's inference of a fact that is the subject of a sufficiency-of-the-evidence claim.

█ Regarding Mateo's Confrontation Clause claim, it has not been briefed or argued by Mateo but merely asserted in conclusory terms. "We 'will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief,' " *In re Riverside–Linden Investment Co.,* 945 F.2d 320, 324 (9th Cir.1991), and we decline to do so here.

**B**

We limit our analysis, therefore, to whether the district court erred in concluding that the CNER satisfied the requirements for authentication under Rule 902.

█ Rule 902 provides for the self-authentication of certain forms of documentary evidence. Relevant to the CNER, the rule provides:

> Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:
>
> (1) Domestic public documents under seal. A document bearing a seal purporting to be that of the United States ... or of a political subdivision, department, officer, or agency thereof, and a signature purporting to be an attestation or execution.

Fed.R.Evid. 902. Under the plain meaning of this section, then, a document may not be excluded for lack of authentication if it meets two criteria. First, the document must be under seal. No party disputes that the CNER was under seal, and thus the CNER appears to satisfy this criterion. Second, the document must bear "a signature purporting to be an attestation." The CNER clearly bears the signature of Karen A. Malveaux Joy, and, although the signature is not labeled an "attestation," it appears under a statement that the same person does "certify to the following." The word "certify" means "[t]o *attest* as being true." *See* Black's Law Dictionary 124 (7th ed.1999) (emphasis added). Hence, the signature on the CNER does "purport[ ] to be an attestation," and thus satisfies the second criteri-

on. On its face, then, the CNER comports with Rule 902(1) and satisfies Rule 902 as a whole.

■ Mateo argues, however, that the authentication is deficient because Joy is not authorized (despite her certification to the contrary) to issue a CNER. Mateo cites 8 U.S.C. § 1360(d) and 8 C.F.R. § 103.7(d)(4). The first of these authorities states:

> Establishment of central file; information from other departments and agencies
>
> (d) A written certification signed by the Attorney General or by any officer of the [INS] designated by the Attorney General to make such certification, that after diligent search no record or entry of a specified nature is found to exist in the records of the [INS], shall be admissible as evidence in any proceeding as evidence that the records of the [INS] contain no such record or entry....

8 U.S.C. § 1360. Mateo argues that, because the Attorney General neither herself certified the information in the CNER nor designated Joy to certify the information, Joy lacked authority to attest to or execute the CNER. The government does not dispute that Joy may lack this authority, for (as an officer of the "Record Services Branch" of the INS) she falls outside the scope of the Attorney General's designation of certification authority in the relevant regulation:

> (d) Authority to certify records. Whenever authorized under 5 U.S.C. 552 or any other law to furnish information from records to persons entitled thereto, the following officials, or their designees authorized in writing as specified below, have authority to make certification, as follows:
>
> .    .    .    .    .
>
> (4) The Assistant Commissioner, Records Systems Division, the Director, Records Management Branch, or the Chief, Records Operations Section, Central Office, or their designee, authorized in writing to make certification in their absence-the non-existence of an official [INS] records.

8 C.F.R. § 103.7.[1]

The flaw in Mateo's argument regarding authority under 8 U.S.C. § 1360(d) and 8 C.F.R. § 103.7 is that Rule 902(1) does not require that a delegation of authority to make certifications be apparent in those provisions (or in any other provision of law). Indeed, the language of Rule 902 implies the contrary. Rule 902(2) indicates that domestic public documents that are *not* under seal will be self-authenticating only if they bear the purported signature of a governmental officer acting "in the official capacity of [such] an officer" and that signature is certified under seal by a governmental officer who attests that "the signer has the official capacity." Fed. R.Evid. 902(2). Because Rule 902 clearly indicates when a document must be executed by a governmental officer acting in his or her "official capacity" in subsection 2 but does not indicate as much in the prior subsection, subsection 1 must not require any extrinsic evidence that the purported attestation made thereunder be by someone acting in his or her "official capacity." Hence, Joy's lack of authority under the provisions relied upon by Mateo cannot defeat the self-authentication of her CNER under Rule 902(1). The same conclusion is reached by contrasting the lack of any requirement for official capacity or authority in subsection 1 with subsection 4, which stipulates that certifications of copies of public records must be made by the actual custodian of the originals "or other person authorized to make certification." Fed.R.Evid. 902(4).

1. The CNER was entered with another document under seal certifying that Joy does indeed have the authority to execute CNERs, but the officer who executed that certification, Ruth E. Jones, Chief of the Record Services Branch of the INS, also appears to lack any delegation of authority to make such certifications on behalf of the Attorney General.

The result of this conclusion is that the provisions upon which Mateo relies are irrelevant in this context. Whereas section 1360(d) specifically provides for the admissibility of documents such as CNERs only if they are "signed by the Attorney General or by any officer of the [INS] designated by the Attorney General to make such certification," 8 U.S.C. § 1360(d), the same documents are admissible under Rule 902(1) regardless of whether they are signed by the Attorney General or her designate. Such was the intended effect of Rule 902(1), which was meant to generalize and to supersede, *see* 28 U.S.C. § 2072(b), the "[m]ore than 50 provisions for judicial notice of official seals [that were] contained in the United States Code" when the rule was promulgated in 1972. Fed.R.Evid. 902 advisory committee's note to paragraph (1) (1972 Proposed Rules).

Because the CNER at issue in this case satisfied the two criteria required on the face of Rule 902(1), the district court properly ruled that the CNER was self-authenticating and admitted the document into evidence. We must therefore reject Mateo's claim that there was insufficient evidence to support his conviction for illegal reentry.

## III

■ Mateo also argues that the district court erred in not awarding another one-level downward departure under U.S.S.G. § 3E1.1(b) for acceptance of responsibility. Subsection (a) calls for a two-level reduction "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). Subsection (b) requires another one-level downward departure beyond that given under subsection (a) if "the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps: (1) timely providing complete information to the government concerning his own involvement in the offense." U.S.S.G. § 3E1.1(b).

We agree with Mateo that the reasons cited by the court for the two-level reduction under subsection (a) satisfy the criteria for the additional one-level reduction under U.S.S.G. § 3E1.1(b)(1). The court stated:

> [Y]ou can give a minus two if the defendant timely provides complete information to the Government concerning his own involvement in the offense. I believe he did that, so I'll give him a minus two.

We have held before that a defendant's entitlement to a third point under U.S.S.G. § 3E1.1(b) depends only on "whether the confession was complete and timely." *Blanco–Gallegos*, 188 F.3d at 1077.

■ The government thus correctly concedes that the district court erred in denying the downward departure under U.S.S.G. § 3E1.1(b)(1). Nevertheless, the government argues that we should remand Mateo's case for sentencing anew in light of the "somewhat ambiguous nature of the record." The government does not specify what is "somewhat ambiguous" about the record, and the district court's factual findings on the timeliness and completeness of Mateo's confession are unequivocal. There is thus no basis for resentencing anew. *See id.; United States v. Stoops*, 25 F.3d 820, 823 (9th Cir.1994).

Because the district court plainly found that Mateo's confession was both timely and complete, we reverse the court's denial of an additional one-level reduction pursuant to U.S.S.G. § 3E1.1(b)(1).

AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings not inconsistent with this opinion.