**United States Court of Appeals**
**For the Fifth Circuit**

_____

No.01-21190
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee

VERSUS

VICTOR SANCHEZ-MILAM

Defendant-Appellant

_____

Appeal from the United States District Court
for the Southern District of Texas - Houston Division

_____

September 5, 2002

Before DAVIS, SMITH, BENAVIDES, Circuit Judges

PER CURIAM:

Appellant, Victor Sanchez-Milam ("Sanchez"), appeals his conviction for illegally reentering the United States after deportation without the express consent of the Attorney General to reapply for admission. Because we find that the district court was presented with substantial evidence supporting Sanchez's conviction, we affirm.

I.

Sanchez was charged in a one-count indictment with being an alien unlawfully present in the United States following deportation after having been convicted of a felony without having "obtained the consent of the Attorney General of the United States for reapplication . . . for admission into the United States" in violation of 8 U.S.C. § 1326 (a) and b(1). Sanchez waived his right to a jury trial and stipulated to all elements of the offense with the exception of the final element, which is that he

did not obtain permission from the Attorney General to reapply for admission into the United States.

During the bench trial, the Government introduced into evidence a "Certificate of Nonexistence of Record" (the "Certificate") signed by the Chief of the Records Service Branch of the Department of Justice Immigration and Naturalization Services (the "INS"), certifying that after a diligent search "no evidence was found to exist in the records of the [INS] of the granting of permission for admission into the United States after deportation or exclusion relating to" Sanchez's file. The Government also called Agent Kelly Dozier of the INS to testify. Agent Dozier detailed the administrative procedure Sanchez was required to follow in order to obtain the Attorney General's consent to apply for a visa. Agent Dozier explained that the Attorney General, through the INS, would first issue the consent for the application, after which Sanchez could go to the State Department to obtain a visa. Agent Dozier testified that, based on the INS's records, the Attorney General never gave Sanchez permission to apply for reentry.

Sanchez presented evidence that he submitted an application for permission to reapply for reentry (the "Application") by filing a form I-212. However, when questioned about the Application, Agent Dozier testified that the Certificate indicates that the Application had been denied.

Following the trial, the district court issued a written opinion finding Sanchez guilty of illegal reentry as charged in the indictment. Sanchez filed a timely notice of appeal.

II.

On appeal, Sanchez argues that the district court erred in finding that the Government produced sufficient evidence that he was guilty of illegally reentering the country after being deported under 8 U.S.C. § 1326 (a). The standard for review of a sufficiency of evidence challenge is whether the evidence was sufficient to justify the trial judge, as trier of fact, to conclude beyond a reasonable doubt that the defendant was guilty. United States v. Mathes, 151 F.3d 251, 252 (5th Cir. 1998).

Under this standard, "[t]he evidence is viewed in the light most favorable to the verdict, accepting all credibility choices and reasonable inferences made by the trier of fact which tend to support the verdict." United States v. Asibor, 109 F.3d 1023, 1030 (5th Cir. 1997) (citing United States v. Jimenez, 77 F.3d 95, 97 (5th Cir. 1996)).

8 U.S.C. § 1326 (a) provides:

(a) ... any alien who (1) has been arrested and deported or excluded and deported, and thereafter (2) enters, attempts to enter, or is at any time found in, the United States, *unless* (A) *prior to his reembarkation* at a place outside the United States or his application for admission from foreign contiguous territory, *the Attorney General has expressly consented to such alien's reapplying for admission;* or (B) with respect to an alien previously excluded and deported, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act, shall be fined under Title 18, or imprisoned not more than 2 years, or both. (Emphasis added).

Sanchez's only assignment of error involves the fourth element of the offense. Tracking the statutory language, Sanchez argues that the Government failed to prove that the Attorney General had not expressly consented to his "reapplying for admission" into the United States. More specifically, Sanchez argues that the Certificate submitted by the Government does not prove that he was never granted consent *to apply* for reentry, it only proves that he was never granted consent for his reentry. Sanchez cites no support for his interpretation of the statute, and this court has read the fourth element to require proof of "lack of the Attorney General's consent to reenter." United States v. Flores-Peraza, 58 F.3d 164 (5th Cir. 1995). See also United States v. Asibor, 109 F.3d 1023, 1037 (5th Cir. 1997).

When examining the Certificate in light of the administrative backdrop in which it was prepared, it is clear that the Attorney General's consent to apply for admission is tantamount to his consent to the admission itself. Agent Dozier explained this process during the trial, and his testimony is consistent with the process detailed in the relevant provisions of the Code of Federal

Regulations.

As a deported alien who had been convicted of a felony, the first step Sanchez was required to take to regain admission into the United States was to submit a form I-212 to the INS for consent of the Attorney General to reapply. 8 U.S.C. § 1182 (h) (2); 8 C.F.R. § 212.2. If the Application was approved by the Attorney General, the INS was required to notify Sanchez of the Attorney General's consent to Sanchez's application for reentry. 8 C.F.R. § 212.2 (h). This is the last action the Attorney General or the INS takes in the reapplication process. If the Attorney General had approved Sanchez's form I-212, notification of the approval would have been contained in the INS files. The record is devoid of any proof that Sanchez was sent this notification or that it is contained in the INS's records. In fact, the Government provided direct proof to the contrary. The statement in the Certificate to the affect that "no evidence is found to exist . . . of the granting of permission for admission" indicates that the INS's records contain no notification of approval of Sanchez's Application.

Sanchez would have this court parse the phrase used in the Certificate "permission for admission." Sanchez asserts that this phrase only means that he was later denied admission. However, this ignores the fact that the process for reentry is dichotomized and that the actual permission for admission does not occur at the INS. Rather, applications for visas (i.e permission for entry) are made with the State Department through the appropriate consular office. 22 C.F.R. § 42.61. Consequently, the INS could not certify that a visa was granted or denied.

Considering this dichotomy, a reasonable inference can be drawn that the INS's records were checked for the only type of consent the Attorney General and the INS grant relating to a deported alien's reentry: the consent to an application for reentry. Accordingly, the statement in the Certificate that there was no evidence in the records of the INS of the "granting of permission for admission"

referred to the lack of evidence that the Application was approved.

A certificate of nonexistence of record of the INS will satisfy the Government's burden of proving that the Attorney General had not consented to an application for reentry. United States v. Oris, 598 F.2d 428 (5th Cir. Fla.1979); United States v. Mateo-Mendez, 215 F.3d 1039 (9th Cir. 2000). "Because the INS is the branch of the Justice Department to which the Attorney General has delegated his responsibilities over immigration matters, the [fact finder] could reasonably conclude that any expression of the Attorney General's consent would appear in the INS files." United States v. Oris, 598 F.2d at 430. Here, the Government did not rest on the Certificate alone but presented further evidence supporting Sanchez's conviction. Agent Kelly Dozier specifically testified without contradiction that the Certificate reflected the Attorney General's denial. Sanchez made no objection to this testimony at the time it was given, and Agent Dozier's credibility may not now be questioned on appeal. United States v. Abisor, 109 F.3d at 1030.

Relying on 8 C.F.R. § 212.2 (b) (1) and *dicta* in the Second Circuit's opinion in United States v. Martus, 138 F.3d 95 (2nd Cir. 1998), Sanchez contends that he could have followed an alternative process to gain consent to apply for reentry. Sanchez asserts that his Application could have been filed with and approved by a State Department consular office. However, this alternative filing location is only sanctioned when the alien seeks a nonimmigrant visa or nonresident alien border crossing card. 8 C.F.R. § 212.2 (b) (1). Moreover, this court has determined that, even if an alien successfully obtains a visa from the State Department, it does not act as a substitute for the consent of the Attorney General. United States v. Trevino-Martinez, 86 F.3d 65 (5th Cir. 1996).

In Trevino-Martinez, the defendant obtained a nonimmigrant visa from the American consulate in Monterrey but failed to obtain the consent of the Attorney General. On appeal from his conviction under 8 U.S.C. §1326, the defendant argued that the visa issued by the consular acted as

a "proxy for the consent of the Attorney General" under 8 C.F.R § 212.2 (b)(2). Id. at 67. In rejecting this argument, this court stated:

> Typically, an alien obtains such consent by securing a written authorization from the Immigration and Naturalization Service ("INS") permitting him to reenter this country. **Importantly, however, this authorization may be issued only by the Attorney General or the INS; under the statute, the American consulate is powerless to grant such an authorization.** 8 C.F.R. §§ 212.2(b)(2), 212.4 (c). Id. at 68 (emphasis added).

Finally, Sanchez asserts that he proved that he submitted the Application which may still be awaiting processing. However, the fact that Sanchez filed an Application does not provide him with a defense. The Application without more is not relevant to whether the Attorney General's consent was granted. United States v. Robles-Mendiola, 215 F.3d 1323 (4th Cir. 2000) (unpublished) (finding that a Form I-212 was properly excluded because it was not probative of the express consent required by section 1326 because the Attorney General never acted upon the form). The salient issue is whether the Attorney General approved the Application, not whether it was filed. Here, the Government has proved with substantial evidence that the Attorney General did not approve the Application.

## III.

For the reasons explained above, the Government produced sufficient evidence that the Attorney General did not consent to Sanchez's application for reentry of the country. Accordingly, the judgment of the district court is AFFIRMED.