United States Court of Appeals
Fifth Circuit

**F I L E D**

May 4, 2007

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

No. 06-40195

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**ELIAZAR RAMOS-FLORES,**

**Defendant-Appellant.**

**Appeal from the United States District Court
for the Southern District of Texas
(1:05-CR-638)**

Before SMITH, BARKSDALE, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Convicted of being an "alien unlawfully found in the United States after deportation, having previously been convicted of a felony", in violation of 8 U.S.C. § 1326(a) and (b)(1), Eliazar Ramos-Flores challenges: the district court's denying, in part, his motion to suppress evidence obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966); and the sufficiency of the evidence showing he was "found in" the United States within the meaning of 8 U.S.C. § 1326. **AFFIRMED.**

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

On 15 July 2005, an outbound fishing vessel departing Port Isabel, Texas, was boarded by United States Coast Guard (USCG) Officers to conduct routine questioning. Of the four people aboard, the captain was a United States citizen; two crewmen admitted being illegal aliens; and Ramos refused to answer questions, stating only that he was from "the park" and "Brownsville". The Officers transported Ramos, along with the two admittedly illegal aliens, to a USCG station and notified the Border Patrol.

Before giving Ramos *Miranda* warnings, USCG and Border Patrol personnel questioned him about his identity, place of birth, parents' names, immigration status, and how and when he entered the United States. Ramos provided his parents' names and stated: he was from Mexico; he was *not* authorized to be in the United States; and he entered on 11 July 2005 around the Los Tomates Bridge. Ramos was then given *Miranda* warnings in Spanish and transported to a Border Patrol station for *fingerprinting*, as discussed below, and processing.

At a pretrial hearing on Ramos' suppression motion, the district court suppressed his parents' names and the date and place he entered the United States. On the other hand, because the rest of Ramos' biographical information was discoverable through his

fingerprints, which are *not* testimonial evidence, the court denied the remainder of the motion.

Ramos waived his right to a jury trial and stipulated in a signed document to the following facts: his name is Eliazar Ramos-Flores; he is an alien and citizen of Mexico; he was found by USCG Officers on an outbound vessel in the Laguna Madre Channel between Port Isabel and South Padre Island, Texas (the location where the USCG boarded the vessel was marked on an attached exhibit); he lacked authorization to enter the United States; and he had been convicted for illegal re-entry in 1999.

Pursuant to a bench trial on those stipulated facts, Ramos was convicted of being an "alien unlawfully found in the United States after deportation, having previously been convicted of a felony", in violation of 8 U.S.C. § 1326(a) and (b)(1). He was sentenced, *inter alia*, to 36 months in prison.

## II.

Ramos presents two contentions: the district court reversibly erred in denying, in part, his motion to suppress his biographical information obtained in violation of **Miranda**; and the stipulated evidence was insufficient to prove he was "found in" the United States within the meaning of 8 U.S.C. § 1326. Each contention fails.

A.

In claiming the district court erred by *not* suppressing the biographical information he revealed before being given his **Miranda** warnings, Ramos maintains this information was the *only basis* for his stipulating to his alien status. We review *de novo* "[t]he question of whether **Miranda**'s guarantees have been impermissibly denied to [Ramos], assuming the facts as established by the trial court are not clearly erroneous". **United States v. Harrell**, 894 F.2d 120, 122-23 (5th Cir. 1990).

As noted, the district court suppressed Ramos' parents' names and the date and place he entered the United States. It refused, however, to suppress Ramos' remaining biographical information, such as his name, nationality, and immigration status, which he also provided to USCG and Border Patrol personnel before being given his **Miranda** warnings, because this information was retrievable using his fingerprints.

Arguably, the district court did *not* err in that ruling; the challenged biographical information was retrievable using his fingerprints and would have been admissible in court. *See*, *e.g.,* **Williams v. Schario**, 93 F.3d 527, 528-29 (8th Cir. 1996) (holding fingerprints are non-testimonial evidence, the admissibility of which is *not* affected by **Miranda**); **United States v. Guzman-Bruno**, 27 F.3d 420, 421 (9th Cir. 1994) (identity of the defendant is admissible even if defendant's statements are not). *See also*

4

*United States v. Lopez-Moreno*, 420 F.3d 420, 435 (5th Cir. 2005) (affirming denial of motion to suppress and holding admissible documents in an alien's "A-file"); *United States v. Sanchez-Milam*, 305 F.3d 310, 312-13 (5th Cir. 2002) (factfinder may infer from absence in A-file that alien lacked permission to re-enter the United States).

In any event, we need not decide that question because Ramos' stipulations render this suppression issue moot. *United States v. Lares-Meraz*, 452 F.3d 352, 354-55 (5th Cir. 2006) ("A controversy is mooted when there are no longer adverse parties with sufficient legal interests to maintain the litigation.") (internal quotations and citations omitted). Both Ramos and his attorney signed the stipulation. And, at the bench trial on 19 October 2005, the district court ensured Ramos and his attorney understood they were agreeing with the Government on these facts. After those stipulated facts were read aloud in court, the Government and Ramos rested. Neither presented any other evidence; nor did they present any objections or reservations.

Relying on *United States v. Mendoza*, 491 F.2d 534, 536 (5th Cir. 1974), Ramos contends the suppression issue is *not* moot, claiming a stipulated-fact bench trial is a proper means to preserve for appeal a pretrial suppression issue. *Mendoza*, however, conditioned such a preservation on the defendants' "not withdraw[ing] their pleas of not guilty, *and* [seeking] to *expressly*

5

*reserve* their right to appeal from the order denying the motion to suppress". ***Id.*** (emphasis added).

Ramos' reliance on a similar case, ***United States v. Robertson***, 698 F.2d 703, 705-709 (5th Cir. 1983), is also misplaced. There, our court refused to equate a stipulation of facts to a guilty plea, which would permit non-jurisdictional defenses on appeal, pursuant to Federal Rule of Criminal Procedure 11. ***Id.*** at 709 (stating defendant "had ample opportunity during the trial to protest the [stipulated-facts] procedure if he disagreed with it").

Ramos did *not* reserve, or otherwise signal, his intent to appeal the partial denial of his suppression motion. Accordingly, he rendered this issue moot with his stipulated facts, such as his "not [having] received permission to re-enter the United States ... when found".

B.

In claiming the stipulated evidence was *not* sufficient to prove being "found in" the United States, within the meaning of 8 U.S.C. § 1326, Ramos contends the district court erred in making that conclusion based on the following stipulation: he "was found by the [USCG] on an outbound vessel in the water between Port Isabel, Texas[,] and South Padre Island, Texas, as specifically illustrated by exhibit 'A', attached hereto". At trial, Ramos emphasized that a circle on exhibit "A" showed the precise location where he was found by the USCG in the Laguna Madre Channel. We

6

examine the sufficiency of the evidence to determine whether a "rational trier of fact could have found that the evidence established guilt beyond a reasonable doubt". *United States v. Serna-Villarreal*, 352 F.3d 225, 234 (5th Cir. 2003).

Drawing on cases in the civil-immigration context, Ramos maintains § 1326's "found in" element requires the Government to prove he voluntarily entered this country by stepping foot on its dry land, free from official restraint. *See*, *e.g.*, *Yang v. Maugans*, 68 F.3d 1540, 1548 (3d Cir. 1995) (entry into the United States, under the Immigration and Nationality Act, 8 U.S.C. §§ 1101(a)(38) and 1361, "does *not* include waters or airspace subject to the jurisdiction of the United States" (emphasis added)).

We need not reach this contention. Our court has specifically stated that the Laguna Madre Channel, where Ramos stipulated he was found, *is* within the United States, *Humble Oil & Refining Co. v. Sun Oil Co.*, 191 F.2d 705, 716 (5th Cir. 1951): "The Congress of the Republic of Texas and the Legislature of the State of Texas, from 1836 to the present time, have defined the boundaries of the State so as to include Laguna Madre". Therefore, pursuant to the stipulated facts, a "rational trier of fact could have found that the evidence established [Ramos was found in the United States and was therefore] guilt[y] beyond a reasonable doubt". *Serna-Villareal*, 352 F.3d at 234.

III.

For the foregoing reasons, the judgment is

*AFFIRMED.*