# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1845

_____

|                                      |     |                             |
|--------------------------------------|-----|-----------------------------|
| United States of America,            | *   |                             |
|                                      | *   |                             |
| Appellee,                            | *   |                             |
|                                      | *   | Appeal from the United States |
| v.                                   | *   | District Court for the      |
|                                      | *   | Western District of Missouri. |
| Carlos Javier Fajardo-Fajardo,       | *   |                             |
|                                      | *   |                             |
| Appellant.                           | *   |                             |

_____

Submitted: November 20, 2009
Filed: February 12, 2010

_____

Before MELLOY, BEAM, and GRUENDER, Circuit Judges.

_____

MELLOY, Circuit Judge.

Carlos Javier Fajardo-Fajardo ("Fajardo") appeals his conviction of being found unlawfully within the United States after deportation, in violation of 8 U.S.C. § 1326(a). We affirm.

I.

On May 24, 2008, a Springfield, Missouri police officer initiated a traffic stop for a vehicle driving erratically and without headlights. The driver identified himself as Pedro Duran and presented a Mexico driver's license and Mexico voter registration

card. After the driver failed a field sobriety test, the officer arrested him and transported him to the Greene County, Missouri jail. During this encounter, the driver told the officer that "he thought he was an illegal," and that he was "waiting on his green card." The police obtained the driver's fingerprints while he was in custody and contacted Immigration and Customs Enforcement ("ICE"). Shortly thereafter, ICE Agent Max Pulley interviewed the driver, who admitted that his true name was Carlos Javier Fajardo-Fajardo, that he was a citizen of Honduras, and that he was present in the United States illegally. Additionally, Fajardo reported that he was deported from Denver, Colorado in 2004 and that he last entered the United States on February 5, 2007 on foot near El Paso, Texas without inspection or admission from any immigration officer.

On July 9, 2008, the Government charged Fajardo with being an alien found unlawfully within the United States after deportation, in violation of 8 U.S.C. § 1326(a). The only contested issue at trial was whether the government provided sufficient proof that Fajardo had not received the consent of the Attorney General of the United States before March 1, 2003, or the Secretary of the Department of Homeland Security after February 28, 2003, to apply for readmission to the United States since the time of his deportation.[1] On that issue, the Government elicited testimony from Agent Pulley regarding Fajardo's Alien File ("A-File"), which contains records of all contact between an individual and ICE and its predecessor agency, the Immigration and Naturalization Service ("INS"). Agent Pulley testified further that he was a custodian of Fajardo's A-File, that he looked at every piece of paper in Fajardo's A-File, and that there was no record that Fajardo applied for or was granted permission to re-enter the United States after deportation. The Government also introduced a sworn statement from Fajardo, dated June 2, 2008. After being

---

[1]In 2002, Congress transferred the authority to grant such consent from the Attorney General to the Secretary of Homeland Security. See Homeland Security Act of 2002, Pub. L. No. 107-296, §§ 402, 442, 116 Stat. 2135, 2177–78, 2193 (2002) (codified at 6 U.S.C. §§ 202, 257).

advised of and waiving his rights, Fajardo stated that he had not obtained permission from the Attorney General or the Secretary of Homeland Security to re-enter the United States after deportation. Lastly, ICE Agent Andrew Mitchell testified that he searched the Citizenship and Immigration Service central index system ("CIS database"), which contains records of aliens' applications for benefits. Agent Mitchell explained that ICE has "look-only" access to the CIS database. He also reported that when he searched the CIS database using Fajardo's name, date of birth, and alien registration number, there was no record that Fajardo had received any benefit or permission for any purpose, including a permanent resident alien card, also known as a "green card."

The jury found Fajardo guilty of the one count. Fajardo then moved for a judgment of acquittal, arguing that the evidence was legally insufficient to prove the lack-of-consent element of the charge. Specifically, Fajardo argued that the Government was required to introduce a Certificate of Nonexistence of Record ("CNR"), signed by an official authorized under federal regulations, to prove the absence of consent to re-entry. The district court[2] denied the motion for acquittal and sentenced Fajardo to sixty-three months' imprisonment. Fajardo appeals his conviction, arguing that the evidence was insufficient to support the guilty verdict.

## II.

In order to show a violation of 8 U.S.C. § 1326(a), the Government must establish: (1) the defendant is an alien; (2) the defendant was previously denied admission, excluded, removed, or deported from the United States or departed the United States while an order of exclusion, deportation, or removal was outstanding; (3) the defendant knowingly entered or was found in the United States; and (4) the

---

[2]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

defendant did not receive the consent of the Attorney General of the United States before March 1, 2003 or the Secretary of Homeland Security after February 28, 2003, to apply for readmission to the United States since the time of the defendant's deportation. 8 U.S.C. § 1326(a); see also United States v. Rodriguez-Arreola, 270 F.3d 611, 619 n.15 (8th Cir. 2001) (citation omitted); United States v. Diaz-Diaz, 135 F.3d 572, 575 (8th Cir. 1998). Only the evidence regarding the fourth element, the absence of consent for re-entry, is at issue in this appeal. In reviewing the district court's denial of a motion for acquittal, we view the evidence "in the light most favorable to the guilty verdict, resolving all evidentiary conflicts in favor of the government, and accepting all reasonable inferences supported by the evidence." United States v. No Neck, 472 F.3d 1048, 1052 (8th Cir. 2007). "A jury verdict will not lightly be overturned and 'we will reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt.'" United States v. Thompson, 533 F.3d 964, 970 (8th Cir. 2008) (quoting No Neck, 472 F.3d at 1052).

First, Fajardo contends that the Government's proof was insufficient without a CNR from an authorized immigration official. We recognize that prosecutors often introduce a CNR as an official agency statement as to the nonexistence of an application for readmission. See, e.g., United States v. Provencio-Sandoval, 272 F. App'x 683, 684 (10th Cir. 2008) (unpublished); United States v. Urqhart, 469 F.3d 745, 747 (8th Cir. 2006); United States v. Cervantes-Flores, 421 F.3d 825, 830–31 (9th Cir. 2005); United States v. Martus, 138 F.3d 95, 97 (2d Cir. 1998) (per curiam). Furthermore, there is case law stating that a jury may reasonably conclude from a CNR that a defendant did not receive consent to apply for readmission to the United States from the Attorney General or Secretary of Homeland Security. See United States v. Sanchez-Milam, 305 F.3d 310, 313 (5th Cir. 2002) (per curiam); United States v. Mateo-Mendez, 215 F.3d 1039, 1045 (9th Cir. 2000). However, we have not

held that a CNR is required for the government to satisfy its burden of proof.[3] Indeed, we are aware of no such authority. Therefore, we will examine the sufficiency of the evidence despite the absence of a CNR.

At Fajardo's trial, the government accomplished what it could otherwise do with a CNR by eliciting testimony from ICE Agents. Agents Pulley and Mitchell testified that they searched Fajardo's A-File and the CIS database, respectively, and did not find a record indicating Fajardo applied for re-entry into the United States. Fajardo argues that the testimony from Agents Pulley and Mitchell "should have been stricken" because 8 C.F.R. § 103.7(d) does not authorize ICE Agents to certify records or the non-existence of records. We disagree with Fajardo's interpretation of that regulation.

Section 103.7(d) governs who may certify information from immigration records "[w]henever authorized under [the Freedom of Information and Privacy Act] or any other law . . . ." The INS delegated certification duties under § 103.7(d) "[i]n order to provide more efficient management and expeditious responses to the requester." Availability of Service Records, 52 Fed. Reg. 3–01 (Jan. 2, 1987) (codified at 8 C.F.R. § 103.7(d)). Section 103.7(d) does not regulate who may access an A-File, who may search the CIS database, or who may testify about the contents of an A-File or the results of a search in the CIS database. Indeed, immigration agents regularly testify about the absence of records in the CIS database and A-Files in their custody. See, e.g., United States v. Mendez, 514 F.3d 1035, 1040 (10th Cir.), cert. denied, 128 S. Ct. 2455 (2008); United States v. Valdez-Maltos, 443 F.3d 910, 911 (5th Cir. 2006) (per curiam); Gonzalez Ramirez, 156 F. App'x at 686. As such, the testimony from Agents Pulley and Mitchell was proper and sufficient for a jury to

_____

[3]Cf. United States v. Gonzalez Ramirez, 156 F. App'x 686, 687 (5th Cir. 2005) (unpublished per curiam) (holding that CNR is sufficient to prove non-consent from the Attorney General but noting, "we have not held that such a certificate is required for the Government to meet its burden of proof.").

reasonably conclude that Fajardo did not receive permission to re-enter the United States.[4]

Alternatively, the Government satisfied its burden of proof on the lack-of-consent element by introducing Fajardo's sworn statement, in which he admitted he had not obtained permission from the Attorney General or the Secretary of Homeland Security to re-enter the United States after deportation. Fajardo argues that his inculpatory statements are legally insufficient because they were not corroborated by "substantial independent evidence which would tend to establish the trustworthiness of the statement." Opper v. United States, 348 U.S. 84, 93 (1954). Fajardo's confession, however, was corroborated by plenty of evidence—his use of a false name, his counterfeit identification documents, his false statement to the arresting officer about waiting on a green card, and the testimony from the ICE agents. As such, Fajardo's corroborated confession was sufficient evidence to support the jury verdict.

## III.

For the foregoing reasons, we affirm the judgment of the district court.

_____

---

[4]In passing, Fajardo challenges the Government's proof as hearsay. The Agents testified about what they observed when they searched Fajardo's A-File and the CIS database. Such statements are not hearsay. See Mendez, 514 F.3d at 1044 (holding that as long as an immigration official testifies at trial about the absence of entry documents and the relevant circumstances indicate an adequate search was performed, the testimony is not hearsay); Valdez-Maltos, 443 F.3d at 911 (same).

-6-