UNITED STATES of America, Plaintiff–Appellee,

v.

Steven Darrell DIAMOND, Defendant–Appellant.

No. 94–30279.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 8, 1995.

Decided April 18, 1995.

Stephen R. Sady, Chief Deputy Federal Public Defender, Portland, OR, for defendant-appellant.

Deborah J. Dealy–Browning, Asst. U.S. Atty., Portland, OR, for plaintiff-appellee.

Before: HALL, O'SCANNLAIN, and RYMER, Circuit Judges.

RYMER, Circuit Judge:

This appeal requires us to decide whether a local law enforcement officer who is cross-deputized as a special United States marshal and acting at the direction of a federal agent loses the protection of 18 U.S.C. § 111 because he was assaulted while intervening in a state law crime. We hold that such an officer is protected by 18 U.S.C. § 111.

Steven Darrell Diamond appeals his sentence and conviction for assaulting a federal officer in violation of 18 U.S.C. § 111. He contends that the district court lacked jurisdiction and that the government failed to prove the charged offense because the person Diamond allegedly assaulted was not a federal officer within the meaning of 18 U.S.C. §§ 111 and 1114. Diamond also contends that because the evidence failed to prove beyond a reasonable doubt that he intended to assault Strovink, the district court erred in denying his motion for acquittal. Finally, Diamond argues that his plea bargain, which would have credited him for time served in state facilities, did not violate Ninth Circuit law and should have been specifically enforced. We have jurisdiction, 28 U.S.C. § 1291, and we affirm.

I

James E. Strovink is a Clackamas County Sheriff's Deputy cross-deputized as a special deputy United States marshal and assigned to the FBI Fugitive Task Force. On July 14, 1993, while he and FBI Agent Renning were watching a shopping center for suspects involved in recent bank robberies, they saw Diamond break into a series of cars in the parking lot. At Renning's suggestion, the officers decided to stop Diamond. Diamond,

however, ignored their orders and fled in his car. After evading Renning, Diamond's way was partially blocked by Strovink and his car. It is disputed whether Diamond then intentionally tried to run down Strovink, who was standing just outside of his car, or whether Diamond unintentionally hit Strovink's car while attempting to flee the scene. It is undisputed, however, that Diamond accelerated in Strovink's general direction, and that Strovink dove back inside his car for protection. Diamond then sped off, running a red light at 60 m.p.h. The officers gave up pursuit to avoid risk to pedestrians and motorists. Diamond was ultimately apprehended on August 4, 1993.

This case was originally tried before a jury. At the close of the government's case, Diamond made a motion for acquittal on the grounds raised in this appeal, which was denied. The jury was unable to reach a verdict. Diamond then entered into a conditional *Alford*[1] plea to the aggravated assault on a federal officer charge with an agreed sentence of 18 months, reserving his right to appeal the district court's denial of his motion for acquittal. The parties anticipated that Diamond would receive approximately 10 months credit for time served in state facilities. On July 18, 1994, however, the government wrote to the court stating that it had become aware of Ninth Circuit and Supreme Court authority prohibiting credit for time served in state institutions. Diamond argues that the precedent was distinguishable, and in the alternative, that the government was bound by its plea agreement regardless of the new authority. The court found in favor of the government, but offered to let Diamond withdraw his plea due to the increase in the time he would actually have to serve without the credit. Diamond pled guilty nonetheless, but reserved the right to appeal the court's sentencing decision.

## II

Diamond contends that Strovink was not a federal officer within the meaning of 18 U.S.C. § 111. He notes that 18 U.S.C.

§ 1114, which enumerates the positions of persons protected under 18 U.S.C. § 111, does not specifically mention *special* deputy marshals—Strovink's position—but rather "deputy marshals." He also relies on 21 U.S.C. § 878(b), which provides that "State and local law enforcement officers performing functions under this section," as Strovink was, "shall not be deemed Federal employees, except that such officers shall be subject to section 3374(c) of Title 5." 5 U.S.C. § 3374(c), in turn, specifies that state officers on federal detail are deemed to be federal employees under nearly 20 different statutes—but not 18 U.S.C. §§ 111 or 1114. From this Diamond infers that Congress did not intend such officers to be protected by 18 U.S.C. § 111.

5 U.S.C. § 3374(c), however, addresses an individual's status as a federal *employee,* not as a federal *officer.* It deals primarily with employment matters such as disability benefits, federal tort liability, and whether the agent receives a state or federal paycheck. That § 3374(c) does not specifically refer to 18 U.S.C. §§ 111 or 1114, therefore, says nothing about Strovink's status as a federal officer.

Diamond also argues that even if Strovink were a federal officer for some purposes, he was not when he tried to apprehend Diamond for stealing belongings left in cars, which is a state offense. In this respect, he contends, Strovink's actions were beyond the scope of the deputation upon which the government relies to establish federal jurisdiction. He notes that Strovink's deputation document states that it "is not a general authority to act as a federal agent," and that it is "valid only while performing duties as assigned by the Federal Bureau of Investigation."

■ The government responds that Strovink was entitled to protection under § 111 because he was cross-deputized as a special deputy U.S. marshal, and because he was acting under the control of FBI Agent Renning. We agree.

---

**1.** *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), permits a defendant to plead guilty even though he claims innocence

provided that there is strong evidence of actual guilt and the defendant intelligently concludes that his interests require entry of a guilty plea.

18 U.S.C. § 1114 brings "any United States marshal or deputy marshal" within the scope of 18 U.S.C. § 111. As a *special* deputy U.S. marshal, Strovink comes within the class of "*any* United States ... deputy marshal." *See, United States v. Torres,* 862 F.2d 1025, 1029–30 (3rd Cir.1988) (state officers cross-deputized by the DEA held to be within the purview of § 111). Because Strovink could come within the scope of § 111 either as a special deputy U.S. marshal or as someone assisting a federal officer, we have no difficulty concluding that the district court had jurisdiction over this offense.

■ It has long been the rule in other circuits that those who assist federal officers are considered to be federal officers themselves for purposes of 18 U.S.C. § 111. *E.g., United States v. Chunn,* 347 F.2d 717, 721 (4th Cir.1965) ("an employee of the State of North Carolina who was on loan at the time of the assault to the Alcohol and Tobacco Tax Unit of the Internal Revenue Service [is deemed to be a federal agent] since he was in fact assisting federal agents ... in the performance of their official duties"); *United States v. Heliczer,* 373 F.2d 241, 249 (2nd Cir.) ("While Detective Imp was not a federal officer, he was acting in cooperation with and in aid of the federal officers and his custody of Smith was on behalf of the United States and was a part of the ... duties of the federal agents; therefore Smith's assault on Imp constituted a resistance to federal arrest."), *cert. denied,* 388 U.S. 917, 87 S.Ct. 2133, 18 L.Ed.2d 1359 (1967); *United States v. Hooker,* 997 F.2d 67, 74 (5th Cir.1993) (because a state officer "was acting in cooperation with federal officers in a federal operation when he was assaulted.... [he] easily fits within the coverage of §§ 111 and 114"). It is undisputed that Strovink was assisting a federal agent at the time he was assaulted.

■ Diamond argues, however, that these cases are distinguishable because they involved state officers intervening in federal crimes, not state crimes, as Strovink did. Diamond cites no support for his claim that whether an officer comes within § 111 depends on the character of the offense that he observes, and we reject it. Strovink was surveilling the shopping center because he

was a special deputy U.S. marshal assigned to the Fugitive Task Force, and he was following the orders of his federal supervisor, FBI Agent Renning, when he was assaulted. Strovink therefore was a federal officer for purposes of § 111 regardless of whether the conduct he was investigating turned out to be a state or federal offense, or none at all.

## III

Diamond argues that there was insufficient evidence to support his conviction for assaulting an officer. He contends that physical evidence and expert testimony suggest that he was merely reckless in grazing Strovink's car.

■ We review a motion for acquittal based on insufficiency of the evidence under the same standard employed by the district court: whether " 'reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *United States v. Bishop,* 959 F.2d 820, 829 (9th Cir.1992) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)).

■ There was evidence that although Diamond's path was only partially blocked by Strovink and Strovink's car, Diamond accelerated straight at Strovink with a crazed look on his face despite plenty of room to maneuver around the car on either side. A rational jury could conclude beyond a reasonable doubt from this evidence that Diamond intended to hit Strovink with his car.

## IV

Diamond argues that the district court erred in not specifically enforcing the original plea agreement and in failing to depart downward based on a combination of circumstances in order to approximate the same sentence which would have been imposed if Diamond had been credited for time served in state institutions.

■ Alleged violations of plea agreements are reviewed de novo, *United States v. Fisch,* 863 F.2d 690 (9th Cir.1988), as is the legal question whether the district court has au-

thority to grant a departure, *United States v. Huss,* 7 F.3d 1444, 1448 (9th Cir.1993).

■ The government and Diamond initially agreed to a sentence of eighteen months, which both parties believed would result in only eight months of additional jail time because Diamond had already been in custody for roughly ten months. When the U.S. Attorney's Office became aware of our cases holding that departures may not be granted on the basis of time spent in state custody, *Huss,* 7 F.3d at 1448–49, or time spent in pre-trial detention, *United States v. Daggao,* 28 F.3d 985 (9th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1390, 131 L.Ed.2d 242 (1995), it advised the court that *Huss* and *Daggao* precluded a departure in this case, and the court agreed. Diamond argues that he does not seek a departure for time served, but rather for a "combination of factors" which would have reduced his sentence by approximately the time he served prior to sentencing. The district court, however, explicitly stated that it would not exercise its discretion to depart based on the combination of circumstances advanced by Diamond. A district court's decision not to grant a discretionary departure is unreviewable. *United States v. Morales,* 898 F.2d 99 (9th Cir.1990).

■ Diamond also argues that even if the plea agreement were unlawful, the government should have been bound by its initial bargain under *United States v. Anderson,* 970 F.2d 602, 608 (9th Cir.1992), in which we held that a defendant would be entitled to appropriate relief if the prosecution had promised not to disclose certain information to the Parole Commission but had done so anyway. Unlike *Anderson,* however, Diamond had the opportunity to withdraw his plea once he learned of the changes in the effect of the agreement. Absent bad faith on the part of the prosecution, there is no reason to give Diamond a windfall simply because the parties were not aware of the most recent sentencing developments in the Ninth Circuit.

AFFIRMED.