**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

WILLIAM WEILAND,
          *Defendant-Appellant.*

No. 04-30091

D.C. No.
CR-03-00070-EFS

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Edward F. Shea, District Judge, Presiding

Argued and Submitted
March 8, 2005—Seattle, Washington

Filed August 24, 2005

Before: Ferdinand F. Fernandez, A. Wallace Tashima, and
Ronald M. Gould, Circuit Judges.

Opinion by Judge Gould;
Dissent by Judge Tashima

11307

---

**COUNSEL**

Stephen R. Hormel, Federal Defenders of Eastern Washington and Idaho, Spokane, Washington, for the defendant-appellant.

James A. McDevitt, United States Attorney, Stephanie J. Lister, Assistant United States Attorney, Spokane, Washington, for the plaintiff-appellee.

---

**OPINION**

GOULD, Circuit Judge:

Defendant-Appellant William Weiland appeals his conviction and sentence for one count of possessing two firearms and ammunition as a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and one count of forfeiture, pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c). Weiland argues: 1) that Federal Rule of Criminal Procedure 41(b) requires suppression of the firearms and ammunition seized during a search of his home because the warrant that authorized the search was not requested by a "federal law enforcement officer" or an "attorney for the government;" 2) that records of his four Oklahoma Second Degree Burglary convictions should be excluded under Federal Rules of Evidence 802 and 901(a), 28 U.S.C. § 1738, and the Confrontation Clause of the Sixth Amendment; 3) that the admission of four convictions to prove Weiland's status as a felon when only one was required was unduly prejudicial under Federal Rule of Evi-

dence 403; 4) that the government did not establish that his convictions for Oklahoma Second Degree Burglary met the definition of "generic burglary" under *Taylor v. United States*, 495 U.S. 575, 599 (1990); 5) that Weiland's 188-month sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e), violated his Sixth Amendment right to a jury trial; and 6) that the district court abused its discretion in denying a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm the district court.

# I

On February 19, 2003, Spokane County Sheriff's Office Detective Michael D. Ricketts applied for and received a federal search warrant from a United States magistrate judge for the home of William Weiland at 42313 North Sherman Road in Spokane County, Washington. When he applied for the warrant, Ricketts had a "Special Deputation Appointment" from the U.S. Marshals Service permitting him, "under authority delegated by the Attorney General, to perform the duties of the Office of Special Deputy United States Marshal as directed by an appropriate official of the United States Marshals Service or some other appropriate Federal Official as so designated." The appointment indicated that the Bureau of Alcohol Tobacco and Firearms (ATF) was Ricketts's sponsoring agency and specifically authorized Ricketts "[t]o seek and execute arrest and search warrants supporting a federal task force." The appointment further stated that Ricketts was "[n]ot authorized to participate in federal drug investigations unless also deputized by DEA or FBI" and that the special deputation did not constitute formal employment by a federal agency.

Later that afternoon, law enforcement officers executed the search warrant for Weiland's property and seized a 9 mm HiPoint Rifle, a .22 caliber Winchester rifle, ammunition, a small marijuana grow, and computer files that contained child

pornography. The government subsequently charged Weiland with possessing firearms and ammunition as a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and forfeiture of the firearms and ammunition, pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c). The indictment also gave notice of the government's intent to pursue enhanced sentencing under the Armed Career Criminal Act, 18 U.S.C. § 924(e).

Before trial, Weiland moved to suppress the firearms found in his house, arguing that the warrant affidavit completed by Ricketts was defective because his deputation as a Special Deputy United States Marshal did not make Ricketts a "federal law enforcement officer" within the meaning of Federal Rules of Criminal Procedure 41(b) and 41(a)(2)(C). In the suppression hearing, Weiland called Ricketts, and Ricketts testified that, with the assistance of his secretary, he personally prepared the warrant affidavit based upon information received from other sheriff's deputies.[1] Ricketts then notified the Drug Enforcement Agency (DEA) and ATF Special Agent Darrell Bone that he planned to apply for a federal warrant, but no one from either agency assisted him in drafting the warrant affidavit. Ricketts, however, did present the warrant affidavit to Assistant U.S. Attorney Tom Rice, who reviewed it, made minor changes, and initialed it "TOR." Someone from the U.S. Attorney's office notified the magistrate that Ricketts would be coming with a warrant application.

At the suppression hearing, Ricketts stated that he understood that the purpose of his special deputation was to "support the ATF office in their investigations and to conduct investigations involving federal firearms violations . . . [t]o obtain search warrants, to be able to be obtain [sic] search warrants and execute arrest warrants." Although Ricketts

---

[1]Before the grand jury, Ricketts testified that he had received information from special agents of the ATF and other federal and state officials. Ricketts also testified that the purpose of his warrant affidavit was to search for marijuana, firearms, and child pornography.

could have gotten a state search warrant, he testified that he chose to apply for a federal warrant because of the high probability that the case would be referred to the U.S. Attorney for federal prosecution. Ricketts also testified that, in his view, his investigation was primarily regarding federal firearms violations that fell within ATF jurisdiction, rather than mainly concerning federal drug crimes. After the hearing, the district court denied the motion to suppress, holding: 1) that Ricketts did not violate Rule 41(b) because he was acting pursuant to his special deputation, and 2) that even if Ricketts had violated the Rule, suppression would not be warranted.

Before trial, the government submitted a memorandum on the admissibility of "penitentiary packets." The "penitentiary packet" relating to Weiland contained four unredacted Oklahoma Second Degree Burglary convictions, fingerprints from Weiland, a photograph of Weiland, and a facsimile transmittal from Paula Menifee at the Offender Records office to the Oklahoma State Bureau of Investigation (OSBI) requesting "any fingerprints, photographs, and rap sheets" on Weiland. In addition, the packet contained an official certification which stated:

> I, RICHARD E. GREENE hereby certify: I am the manager of the Offender Records Unit, of the Oklahoma Department of Corrections, the agency having jurisdiction over all adult correctional facilities of the state of Oklahoma; that in my legal custody as such officer, are the original files and records of persons heretofore committed to the Department of Corrections; that the 1) fingerprint card, 2) photograph, and 3) commitment documents attached are copies of the original records of persons heretofore committed to said Department of Corrections, and who served a term of incarceration/supervision therein; that I have compared the foregoing and attached copies with their respective originals now on file in my

> office and each thereof contains and is a full, true, and correct copy from its said original.

Accompanying Greene's declaration was a certificate under seal from the Secretary of State of the State of Oklahoma attesting that Richard E. Greene was the Manager, Offender Records Unit of the Oklahoma Department of Corrections, that Greene was authorized to sign the attached certificate, and that Greene's signature on the certificate was genuine. The defendant submitted a memorandum opposing the admission of the "penitentiary packet" on the first day of the trial.

At trial, the government moved to admit the documents in the "penitentiary packet" as self-authenticating public records pursuant to Federal Rule of Evidence 902(4) and as hearsay subject to the exception for public records and reports pursuant to Rule 803(8). Weiland objected, and the district court sustained the objection, ruling that the "penitentiary packet" was not sufficiently reliable and was thus inadmissible because the facsimile from Paula Menifee to the OSBI suggested that the records were not in fact in the custody of Greene.

Following this ruling, the government then attempted to authenticate the "penitentiary packet" and four other certified copies of the Oklahoma convictions as records of a regularly conducted activity pursuant to Rule 902(11) and argued that they were subject to the business records hearsay exception in Rule 803(6). As foundation for the business records exception, the government provided a blank form and said that it would be filled out by Nancy A. Young, Administrative Programs Officer, OSBI. Weiland objected on the basis that he had not received notice of the government's intent to authenticate the "penitentiary packet" and certified convictions as business records and that the admission of these documents would violate his right to confront and cross-examine Young. The district court overruled the objection and conditionally admitted both the "penitentiary packet" and the certified

records of conviction pending the receipt of Young's affidavit. The completed affidavit arrived immediately before the case went to the jury, and contained a statement from Young stating that the records were made by a person with first-hand knowledge in the course of a regularly conducted activity. The district court then unconditionally admitted all four of the certified convictions and the "penitentiary packet" into evidence.

Weiland further objected to the admission of multiple Oklahoma Second Degree Burglary convictions, arguing that, because the government needed to prove only one conviction to establish his status as a felon, the admission of the second, third, and fourth convictions was more prejudicial than probative in violation of Rule 403. The district court overruled the objection and admitted all four convictions without redacting them. The district court did, however, instruct the jury that the Oklahoma records had "been admitted for a limited purpose" and that the jury should "consider them only in determining whether the government ha[d] met its burden of proving the elements of the crime charged in the Superceding Indictment." The district court further instructed the jury that it should "not consider a prior conviction as evidence of guilt of the crimes for which the Defendant is now on trial, other than as to proof of one of the elements of those crimes." The jury convicted Weiland of possessing a firearm as a convicted felon, in violation of § 922(g)(1).

At sentencing, the government presented both a Judgment and Sentence on Plea of Guilty and an Information for each of the four Oklahoma Second Degree Burglary convictions. The four Informations detailed burglaries that occurred during a one-week Oklahoma crime spree in January 1976. Each Information provided that Weiland had forcibly entered a building with the intent to take unlawfully the personal property of another. The district court ruled that these documents established that Weiland had been convicted of a crime that met the elements of generic burglary under the modified cate-

gorical approach. Based upon the four Oklahoma Second Degree Burglary convictions, the district court sentenced Weiland to 188 months imprisonment pursuant to the Armed Career Criminal Act, 18 U.S.C. § 924(e). The district court also denied Weiland's motion for a downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. Weiland timely appeals his conviction and sentence.

## II

Weiland argues that the firearms seized pursuant to the federal search warrant should be suppressed as the fruits of a violation of Federal Rule of Criminal Procedure 41(b) because Ricketts was neither a "federal law enforcement officer" nor an "attorney for the government" at the time that he applied for the warrant.[2] To prevail on his motion to suppress, Weiland must demonstrate that: A) Ricketts made a "request" for a federal search warrant and was not then a "federal law enforcement officer," and B) any assumed violation of Rule 41(b) rose to the level of a constitutional violation, resulted in prejudice to Weiland, or was the result of intentional and deliberate disregard of Rule 41. *United States v. Johnson*, 641 F.2d 652, 655-57 (9th Cir. 1980).

## A

**[1]** Ordinarily, a state law enforcement official violates Rule 41 by applying for and obtaining a federal search warrant. *Id.* at 656; *Luk*, 859 F.2d at 673. Rule 41 directs that a warrant may issue only "[a]t the request of a federal law enforcement officer or an attorney for the government," Fed. R. Crim. P. 41(b), and defines a "federal law enforcement officer" as "a government agent (other than an attorney for the government) who is engaged in enforcing the criminal laws

---

[2]We review de novo whether a person requesting a warrant is a "federal law enforcement officer." *See United States v. Luk*, 859 F.2d 667, 670 (9th Cir. 1988).

and is within any category of officers authorized by the Attorney General to request a search warrant." FED. R. CRIM. P. 41(a)(2)(C). The government argues that, at the time Ricketts applied for the federal warrant to search Weiland's home, he was a "federal law enforcement officer" by reason of his position as a Special Deputy U.S. Marshal and that, in any event, it was the U.S. Attorney, and not Ricketts, who made the "request" for a federal search warrant.[3]

[2] There is no direct precedent in our circuit regarding whether a state or local law enforcement official becomes a "federal law enforcement officer" for Rule 41 purposes by reason of a deputation as a Special Deputy U.S. Marshal. We have, however, in the context of a criminal prosecution for assaulting a federal officer, held that a state official specially deputized as a U.S. Marshal was an "officer . . . of the United States" within the meaning of 18 U.S.C. § 111 even though he was not a federal "employee" within related provisions of the United States Code. *United States v. Diamond*, 53 F.3d 249, 251-52 (9th Cir. 1995); *see also United States v. Bryant*, 117 F.3d 1464, 1467-69 (D.C. Cir. 1997) (holding that a state law enforcement agent was subject to criminal sanction for impersonating a federal officer when that agent falsely claimed to be a Special Deputy U.S. Marshal). We thus consider as a matter of first impression whether, for Rule 41 purposes, a deputation as a Special Deputy U.S. Marshal confers "federal law enforcement officer" status on a state law enforcement official, and we hold that it does.

[3] Ricketts's position as a Special Deputy U.S. Marshal made him a "federal law enforcement officer" within the meaning of Rule 41. The statutes and regulations give the Marshals authority to deputize local law enforcement officers to perform the functions of Deputy U.S. Marshals, 28 U.S.C.

---

[3]Because we hold that Ricketts was a "federal law enforcement officer" within the meaning of Rule 41, we do not reach the question whether the U.S. Attorney, Ricketts, or both "requested" the warrant.

§ 566(c); 28 C.F.R. § 0.112, and U.S. Marshals have long had the authority to seek and execute federal search warrants, 28 U.S.C. §§ 564, 566. When Ricketts applied for the warrant, his affidavit indicated that he authored the warrant affidavit in his capacity as a Special Deputy U.S. Marshal, not in his capacity as a local law enforcement official. As such, Ricketts was a "government agent . . . engaged in enforcing the criminal laws" as authorized by the Attorney General, and his request for a warrant did not violate Rule 41. FED. R. CRIM. P. 41(a)(2)(C).[4]

## B

**[4]** Even if we were to conclude that Ricketts was not a "federal law enforcement officer" and that a Rule 41 violation occurred, suppression of the firearms and ammunition seized during the search of Weiland's home would not be warranted. As we recently held in *United States v. Martinez-Garcia*:

> Suppression of evidence obtained through a search that violates Federal Rule of Criminal Procedure 41 is required only if: 1) the violation rises to a 'constitutional magnitude;' 2) the defendant was prejudiced, in the sense that the search would not have occurred or would not have been so abrasive if law enforcement had followed the Rule; or 3) officers acted in 'intentional and deliberate disregard' of a provision in the Rule.

397 F.3d 1205, 1213 (9th Cir. 2005) (quoting *United States v. Crawford*, 657 F.2d 1041, 1047 (9th Cir. 1981)); *Johnson*, 641 F.2d at 656.

---

[4]Our holding will increase the degree of reliability in the warrant system. When state officials seek and execute search warrants in their capacity as specially deputized federal law enforcement officers, they will be subject to the same Rule 41 and other standards as all other federal law enforcement officers. *Rea v. United States*, 350 U.S. 214, 217 (1956) ("The obligation of the federal agent is to obey the Rules.").

**[5]** None of these factors is present here. First, Weiland does not — and could not — contend that Ricketts violated the Fourth Amendment by applying for a search warrant in his role as a state law enforcement officer deputized as a Special Deputy U.S. Marshal. Second, there is no evidence that Weiland was prejudiced by Ricketts's decision to apply for a federal, rather than state, search warrant. The search of Weiland's home almost surely would have proceeded as it did absent any assumed Rule 41 violation: Ricketts testified expressly that he could have gotten a state search warrant, but elected not to do so because of the probability that this case would be referred to the office of the U.S. Attorney. Third, the record reflects that neither Ricketts nor any other law enforcement officer acted in "intentional and deliberate disregard" of Rule 41. *Martinez-Garcia*, 397 F.3d at 1213 (quoting *Crawford*, 657 F.2d at 1047). Ricketts had an appointment as a Special Deputy U.S. Marshal that authorized him "[t]o seek and execute arrest and search warrants supporting a federal task force," and, at the suppression hearing, Ricketts testified that he believed that he was authorized to seek search warrants. Ricketts also presented the warrant affidavit to an Assistant U.S. Attorney, and notified both ATF Agent Bone and the DEA that he planned to apply for a federal search warrant for Weiland's home. We hold that Ricketts did not act in intentional and deliberate disregard of Rule 41. The district court correctly concluded that, even assuming a violation of Rule 41, suppression of the firearm and ammunition seized during the search of Weiland's home would be unwarranted.

## III

Weiland contends that the records of four Oklahoma Second Degree Burglary convictions, the fingerprints and the photograph contained in the "penitentiary packet" were inadmissible under Federal Rules of Evidence 901(a), 902, 802 and 803 and that these documents were received into evidence in violation of 28 U.S.C. § 1738 and the Confrontation Clause.[5]

---

[5]As a threshold issue, the government argues that Weiland was precluded from objecting to the admissibility of the convictions at trial and

We consider the arguments based on authentication, hearsay, § 1738, and the Confrontation Clause in turn.

## A

Weiland argues that the fingerprints, photograph and four records of conviction for Oklahoma Second Degree Burglary were not properly authenticated, as required by Federal Rule of Evidence 901(a).[6] The government counters that the records were self-authenticating under Rules 902(4) and 902(2), governing certified copies of public records, and Rule 902(11), governing certified domestic records of regularly conducted activity. Although we reject the argument that the records of conviction were self-authenticating under Rule 902(11), we agree that the records of conviction were self-authenticating under Rules 902(4) and 902(2).

**[6]** With respect to Rule 902(11), the documents in the "penitentiary packet" were not properly authenticated under the exception for certified domestic records of regularly conducted activity for three reasons. First, a party may not circumvent the requirements for the authentication of public records outlined in Rule 902(4) by invoking Rule 902(11). Rule 902(4), not Rule 902(11), describes the manner for establishing the authenticity of public records. Second, the plain language of Rule 902(11) requires that:

---

was required to raise these issues in a pretrial suppression motion. The district court rejected this argument, and we agree with its analysis. In general, it is permissible to raise an evidentiary objection to an exhibit at the time it is offered for admission.

[6]When, as here, the issue of proper authentication involves a significant question of fact, we review for abuse of discretion a district court decision to admit evidence as properly authenticated. *United States v. Mateo-Mendez*, 215 F.3d 1039, 1041-42 (9th Cir. 2000). We review de novo a district court interpretation of an authentication rule. *Id.*

> A party intending to offer a record into evidence under this paragraph must provide written notice of that intention to all adverse parties, and must make the record and declaration available for inspection sufficiently in advance of their offer into evidence to provide an adverse party with a fair opportunity to challenge them.

In this case, it is undisputed that the government never provided written notice to Weiland of its intention to offer the records of conviction as self-authenticating under Rule 902(11) and that the government did not make Young's declaration available for inspection until *after* its conditional introduction into evidence.[7] Such lack of notice violates both the letter and the spirit of Rule 902(11) and provides the party opposing admission with substantially no opportunity to verify the authenticity of either the records or any foundational testimony or affidavits. Finally, even if the government could have circumvented the requirements of Rule 902(4) by invoking Rule 902(11), the certification provided by Young, which was neither under seal pursuant to Rule 902(1) nor itself certified as authentic by an official with a seal pursuant to Rule 902(2), was not sufficient to provide proof of the authenticity

---

[7]The government maintains that it should be excused from its nearly complete failure to comply with the plain language of Rule 902(11) because Weiland did not make a pretrial motion to suppress the convictions contained in the "penitentiary packet." This argument lacks merit. Rule 902(11) does not contain an exception to the notice requirement for cause shown — good or otherwise. Also, Weiland objected to the offer of the photograph, the fingerprints, the convictions and their certification at an appropriate time: when the government offered that exhibit at trial. The government, no less than any other litigant, is required to ensure that evidence it intends to offer is admissible, to anticipate objections from opposing parties, and to comply with the Federal Rules of Evidence. A defendant is not required to give the prosecution advance notice of his or her intent to object for lack of proper authentication or violation of the prohibition on hearsay; indeed, in many cases, due to the inability completely to foresee foundational testimony, such an advance objection would be impossible.

of the records of conviction, the fingerprints, and the photograph, which we again emphasize were public records that fall within Rule 902(4). Accordingly, we hold that the district court erred in grounding the admission of the "penitentiary packet" and certified convictions on Rule 902(11).

**[7]** Nevertheless, although the district court erred in admitting the contents of the "penitentiary packet" under Rule 902(11), we hold that the records were properly authenticated because the documents in the "penitentiary packet" were self-authenticating public records admissible under Rules 902(2) and 902(4).[8] *Mateo-Mendez*, 215 F.3d at 1044-45; *United States v. Huffhines*, 967 F.2d 314, 320 (9th Cir. 1992). Federal Rule of Evidence 902(4) provides for the self-authentication of:

> A copy of . . . a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraph (1), (2), or (3) of this rule or complying with any Act of Congress or rule prescribed by the Supreme Court pursuant to statutory authority.

FED. R. EVID. 902(4).

**[8]** The records of conviction, the photograph of Weiland, and his fingerprints fall within the self-authentication provisions of Rule 902(2). Pursuant to Rule 902(4), the records were certified as correct by Greene, who also stated that he

---

[8]Although we hold that the district court erred in admitting the "penitentiary packet" as a self-authenticating business record pursuant to Rule 902(11), we may affirm the district court if the records were properly authenticated under any other provision. *See United States v. Loyola-Dominguez*, 125 F.3d 1315, 1318 (9th Cir. 1997).

was the legal custodian of the records and that he had compared the certified copies to their originals. Pursuant to Rule 902(2), the Secretary of State of the State of Oklahoma, under seal, certified that Greene was authorized to execute the certificate and that Greene's signature was genuine. This suffices to establish that the records were what they purported to be, fulfilling the purpose of our inquiry into the authentication of the documents in the "penitentiary packet." FED. R. EVID. 901(a).

[8] The facsimile included in the "penitentiary packet," apparently from Greene's office to Paula Menifee in the OSBI, does not change our analysis. The relevant inquiry is whether Greene had the records in his legal custody or was an "other person authorized to make the certification," not whether the records were stored in his personal physical custody. FED. R. EVID. 902(4); *United States v. Combs*, 762 F.2d 1343, 1348 (9th Cir. 1985); *see also Yaich v. United States*, 283 F.2d 613, 617 (9th Cir. 1960). If Greene had the records in his legal custody and certified that they were accurate in compliance with Rule 902(1), 902(2), or 902(3), they were properly authenticated under Rule 902(4). No provision of the Federal Rules of Evidence requires that Greene also be shown to have kept the records in his physical custody at all times, so long as the records were "actually recorded or filed in a public office." FED. R. EVID. 902(4). Federal Rule of Civil Procedure 44(a)(1), incorporated into Federal Rule of Criminal Procedure 27, accords with our analysis. FED. R. CIV. P. 44(a)(1) ("An official record kept within . . . any state . . . may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record . . . and accompanied by a certificate that such officer has the custody. The certificate . . . may be made by any public officer having a seal of office and having official duties in the district or political subdivision in which the record is kept, authenticated by the seal of the officer's office."). Moreover, even if Greene were not the official custodian of the records contained in the "penitentiary packet," the affidavit, under

seal, provided by the Secretary of State of the State of Okla-
homa, establishes that Greene was a "person authorized to
make the certification." FED. R. EVID. 902(4). We hold that
the records contained in the "penitentiary packet" were self-
authenticating public records under Rules 902(4) and 902(2).

**B**

Weiland next maintains that, even if properly authenticated,
the documents contained in the "penitentiary packet" should
have been excluded as inadmissible hearsay pursuant to Fed-
eral Rule of Evidence 802.[9] The government responds that the
convictions are admissible under the hearsay exceptions enun-
ciated in Rules 803(6), 803(8), and 803(22) and that the fin-
gerprints and photograph are admissible under Rules 803(6)
and 803(8).

[9] We begin by rejecting the argument that the convic-
tions, fingerprints and photograph were properly admitted
pursuant to the business records hearsay exception in Rule
803(6). The law of this circuit has long established that public
records, including records of conviction, must be admitted, if
at all, under Rule 803(8), or, in some cases, under a specific
hearsay rule, such as Rule 803(22), governing the admission
of prior convictions. *United States v. Orellana-Blanco*, 294
F.3d 1143, 1149 (9th Cir. 2002); *United States v. Pena-
Gutierrez*, 222 F.3d 1080, 1086-87 (9th Cir. 2000) (citing
*United States v. Orozco*, 590 F.2d 789, 793 (9th Cir. 1979)).
The government may not circumvent the specific require-
ments of Rule 803(8) by seeking to admit public records as
business records under Rule 803(6). Nor may the government
attempt to combine Rules 803(6) and 803(8) into a hybrid rule
to excuse its failure to comply with either. *See United States*

---

[9]We review de novo a district court construction of a hearsay rule, and
we review for an abuse of discretion a district court decision to admit evi-
dence under a hearsay exception. *United States v. Hernandez-Herrera*,
273 F.3d 1213, 1217 (9th Cir. 2001).

*v. Doyle*, 130 F.3d 523, 547 (2d Cir. 1997). Also, as we previously discussed in Part III.A., the government failed to authenticate properly the documents in the "penitentiary packet" under Rule 902(11) and did not authenticate the affidavit of Nancy Young. Excluding the improperly admitted Young affidavit, the government has presented no evidence to establish that the convictions, fingerprints and photograph fall within the scope of Rule 803(6), and the district court erred in admitting these documents on that ground.

**[10]** Because the district court erred in holding that the documents in the "penitentiary packet" and the certified convictions were admissible as records of regularly conducted activity under Rule 803(6), we next turn to the question of whether the convictions, photograph and fingerprints are admissible under any other hearsay exception. *Loyola-Dominguez*, 125 F.3d at 1318. First, with respect to the documents titled "Judgment and Sentence on Plea of Guilty" only, we hold that these records are evidence of previous convictions that are independently admissible under Rule 803(22). *See United States v. Dancy*, 861 F.2d 77, 79 (5th Cir. 1988) (per curiam). Second, with respect to the fingerprints and photograph contained in the "penitentiary packet," we conclude that these documents are public records of routine and nonadversarial matters that fall within Rule 803(8)(B), and were admissible thereunder. *Orellana-Blanco*, 294 F.3d at 1150; *United States v. Wilmer*, 799 F.2d 495, 500-01 (9th Cir. 1986). The fingerprints and photograph do not contain information akin to " 'police officers' reports of their contemporaneous observations of crime' " that might be biased by the adversarial nature of the report. *Orozco*, 590 F.2d at 794 (quoting *United States v. Grady*, 544 F.2d 598, 604 (2d Cir. 1976)). To the contrary, fingerprinting and photographing a suspect, and cataloguing a judgment and sentence are the types of routine and unambiguous matters to which the public records hearsay exception in Rule 803(8)(B) is designed to apply. *Orellana-Blanco*, 294 F.3d at 1150 (citing a judgment as an example of a document that falls within Rule 803(8));

*Pena-Gutierrez*, 222 F.3d at 1086-87; *United States v. Gilbert*, 774 F.2d 962, 965 (9th Cir. 1985) (per curiam) (holding that notations on a fingerprint card fall within Rule 803(8)); *United States v. Wilson*, 690 F.2d 1267, 1275-76 (9th Cir. 1982). In addition, we hold that "the sources of the information or other circumstances" in this case do not "indicate lack of trustworthiness." FED. R. EVID. 803(8). There is no allegation here that any document in the "penitentiary packet" is factually inaccurate, and, further, there is no reason to think that persons making routine court and prison records in Oklahoma have either motive or opportunity to fabricate or falsify these documents. *Orozco*, 590 F.2d at 794; *see also Chesapeake & Del. Canal Co. v. United States*, 250 U.S. 123, 128-29 (1919). We hold that the relevant contents of the "penitentiary packet," including the documents titled "Judgment and Sentence on Plea of Guilty," the fingerprints, and the photograph, were properly admitted pursuant to the public records hearsay exception in Rule 803(8).

## C

**[11]** Weiland next maintains that the admission of the convictions violated 28 U.S.C. § 1738. We disagree. Section 1738, the federal full faith and credit statute, states, in part:

> The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.

> Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they

have by law or usage in the courts of such State, Territory or Possession from which they are taken.

Weiland makes a strained argument that § 1738 creates heightened evidentiary requirements for the admission of the records of a prior conviction. We can find no authority for this proposition,[10] nor does reason support it. To the contrary, the commentary to Federal Rule of Civil Procedure 44, incorporated into Federal Rule of Criminal Procedure 27, specifically indicates that, under circumstances in which § 1738 is applicable, proof may be made *either* by compliance with the Federal Rules of Evidence *or* in compliance with § 1738. *See Mateo-Mendez*, 215 F.3d at 1045.

[12] Section 1738 is designed to ensure that each state and federal court provides full faith and credit to appropriately authenticated judicial judgments rendered in the other states. The contents of the "penitentiary packet" challenged in this case would be admissible in an Oklahoma criminal court pursuant to the state hearsay exception for public records, *Frazier v. State*, 874 P.2d 1289, 1291-92 (Okla. Crim. App. 1994), and § 1738 provides no bar to its admission here. *Huffhines*, 967 F.2d at 320.

## D

Weiland next argues that the admission of the records of his prior Oklahoma convictions without subjecting the Secretary of State of the State of Oklahoma, Oklahoma records custodian Richard E. Greene, and OSBI officer Nancy Young to cross-examination violated the Confrontation Clause of the Sixth Amendment.[11] To determine whether evidence was

---

[10]The sole precedent Weiland cites in support of his argument is dicta in a concurring opinion in *United States v. Perlmuter*, 693 F.2d 1290, 1295 (9th Cir. 1982) (Ferguson, J., concurring). *Perlmuter*, a case involving criminal convictions from a foreign jurisdiction, *id.* at 1292, is inapplicable to this case.

[11]We review de novo whether the district court admitted evidence in violation of the Confrontation Clause. *Lilly v. Virginia*, 527 U.S. 116, 136-37 (1999); *United States v. Nielsen*, 371 F.3d 574, 581 (9th Cir. 2004).

admitted in violation of the Confrontation Clause, we look to the framework set forth in *Crawford v. Washington*, 541 U.S. 36 (2004).[12]

In conducting an inquiry pursuant to *Crawford*, we first consider whether challenged evidence was "testimonial" in nature. If the evidence was testimonial, the government must provide the defendant with confrontation and the opportunity for cross-examination. *Id.* at 68 ("Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination."). If the evidence is non-testimonial, there is uncertainty as to whether the "indicia of reliability" or firmly rooted hearsay exception test enunciated in *Ohio v. Roberts*, 448 U.S. 56, 66 (1980), survives *Crawford. See, e.g.*, *United States v. Saget*, 377 F.3d 223, 227, 230-31 (2d Cir. 2004); *United States v. Manfre*, 368 F.3d 832, 838 n.1 (8th Cir. 2004).

[13] We first turn to the paramount question of whether the evidence admitted without opportunity for cross-examination was testimonial in nature. Here, the documents contained in the "penitentiary packet" incorporate two layers of hearsay, and, correspondingly, two potential Confrontation Clause problems: 1) the records themselves, and 2) the statements of Greene and the Secretary of State of the State of Oklahoma providing the foundation to establish their authenticity.[13] With

---

[12]While this case was pending on appeal, the U.S. Supreme Court decided *Crawford v. Washington*, rejecting the "indicia of reliability" or firmly rooted hearsay exception test in favor of an inquiry into whether the evidence was testimonial. Although *Crawford* had not yet been decided at the time that Weiland faced trial, we apply it here on direct review. *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987).

[13]Because we conclude that Greene's certification was sufficient to authenticate the "penitentiary packet," we do not reach the question of whether there would have been a Confrontation Clause violation had Young been the only foundational witness. Unlike public records admitted under Rule 803(8), records of a regularly conducted activity admitted

respect to the first layer, the records of conviction and the information contained therein, the fingerprints, and the photograph, it is undisputed that public records, such as judgments, are not themselves testimonial in nature and that these records do not fall within the prohibition established by the Supreme Court in *Crawford*. 541 U.S. at 56.

**[14]** With respect to the second layer, the certifications by Greene and the Secretary of State of the State of Oklahoma, we encounter a novel question. Although the Court in *Crawford* declined to offer a comprehensive definition of testimonial evidence, the Court stated that "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* at 68; *see also White v. Illinois*, 502 U.S. 346, 365 (1992) (Thomas, J., concurring in part) ("[T]he Confrontation Clause is implicated by extrajudicial statements only insofar as they are contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions."). Greene's certification and that of the Secretary of State are "affidavits" prepared for the purposes of litigation that might be argued to invoke the protections of the Confrontation Clause. Nevertheless, we conclude that a routine certification by the custodian of a domestic public record, such as that provided by Greene, and a routine attestation to authority and signature, such as that provided by the Secretary of State in this case, are not testimonial in nature. *See United States v. Rueda-Rivera*, 396 F.3d 678, 680 (5th Cir. 2005) (per curiam). Not only are such certifications a "routine catalogu-

---

under Rule 803(6) require additional foundation. *Loyola-Dominguez*, 125 F.3d at 1318 ("[T]he public records exception is one of the few hearsay exceptions that does not require a foundation."). Because we resolve the issues presented in this case based upon the public records provisions for self-authentication, FED. R. EVID. 902(4), and hearsay, FED. R. EVID. 803(8), we need express no opinion on whether the Confrontation Clause requires the government to make the custodian of business records available for cross-examination.

ing of an unambiguous factual matter," *United States v. Bahena-Cardenas*, 411 F.3d 1067, 1075 (9th Cir. 2005), but requiring the records custodians and other officials from the various states and municipalities to make themselves available for cross-examination in the countless criminal cases heard each day in our country would present a serious logistical challenge "without any apparent gain in the truth-seeking process." *Crawford*, 541 U.S. at 76 (Rehnquist, C.J., concurring in the judgment). We decline to so extend *Crawford*, or to interpret it to apply so broadly.

**[15]** Having concluded that both the documents in the "penitentiary packet" and the certifications by Oklahoma records custodian Greene and the Secretary of State were non-testimonial in nature, we next turn to the question whether these non-testimonial records might nevertheless have been admitted in violation of the Confrontation Clause under *Roberts*. *See Saget*, 377 F.3d at 230-31. We need not address this inquiry here, however, because, even assuming that the *Roberts* test survives *Crawford* and applies to non-testimonial evidence, the law of our circuit establishes that the *Roberts* test would be met in this case because the hearsay exception for public records and their certifying documents is firmly rooted. *Orellana-Blanco*, 294 F.3d at 1150; *see also Roberts*, 448 U.S. at 66. We thus conclude that the district court did not admit the documents in the "penitentiary packet" in violation of the Confrontation Clause of the Sixth Amendment.

## IV

**[16]** Weiland contends that introduction of four Oklahoma felony convictions when only one was required to prove his status as a felon under § 922(g)(1) unfairly prejudiced him in violation of Federal Rule of Evidence 403. *See United States v. Breitkreutz*, 8 F.3d 688, 692 (9th Cir. 1993), *abrogated on other grounds by Old Chief v. United States*, 519 U.S. 172 (1997); *United States v. Lloyd*, 981 F.2d 1071, 1071-73 (9th Cir. 1992) (per curiam); *see also United States v. Jones*, 266

F.3d 804, 811-12 (8th Cir. 2001).[14] In general, in a § 922(g)(1) prosecution, the government is entitled to introduce evidence of a prior felony conviction unless the defendant offers to stipulate to his status as a felon. *See Old Chief*, 519 U.S. at 190-92. Because, however, of the prejudicial nature of evidence of prior criminal history, a district court must take great care to limit the evidence of previous convictions and to avoid unnecessary prejudice to the defendant. FED. R. EVID. 403; *Old Chief*, 519 U.S. at 185; *United States v. Hernandez*, 109 F.3d 1450, 1452 (9th Cir. 1997) (per curiam).

[17] The government, over Weiland's objection, introduced four substantially identical records of Oklahoma Second Degree Burglary convictions. The issue is close because there was no stipulation as to admissibility of any one conviction, but we conclude that the district court abused its discretion in admitting all four records of conviction. The four records were nearly identical: each judgment was produced on the same date, in the same Oklahoma district court, for the same crime of Second Degree Burglary. The documents were also authenticated by the single certificate completed by records custodian Greene. Given the characteristics of the records of conviction in this case, it is unlikely that one conviction would lack a flaw contained in the others. *Breitkreutz*, 8 F.3d at 692 ("Normally, however, prior felonies are established by documentary proof that's hard to dispute; proof of more prior felonies adds very little of probative value and amounts to unfair piling on."); *cf. Lloyd*, 981 F.2d at 1073. Also, both the large number of admitted convictions and the fact that the jury viewed them without redacting the nature of the underlying offense increased the risk of prejudice while adding little to the case of the prosecution. *See Hernandez*, 109 F.3d at 1452; *see also Old Chief*, 519 U.S. at 190-91 ("The most the jury needs to know is that the conviction . . . falls within the class

---

[14]We review for abuse of discretion a district court decision to admit multiple felony convictions to prove a defendant's status as a felon. *Lloyd*, 981 F.2d at 1072-73.

of crimes that Congress thought should bar a convict from possessing a gun . . . ."); *United States v. Rhodes*, 32 F.3d 867, 875-76 (4th Cir. 1994) (Hamilton, J., concurring). Although the prosecution may hedge its bets to some extent against reversal based upon improperly admitted evidence, *Lloyd*, 981 F.2d at 1073, an objection by the defendant does not give the government license to introduce an unlimited number of prior convictions when, as here, the record is devoid of any indication that the records of conviction were distinguishable, one from another, in any way meaningful under the Federal Rules of Evidence or for appeal purposes.

**[18]** Having determined that the district court abused its discretion in admitting all four Oklahoma convictions, we turn to the question whether that error was harmless. *Kotteakos v. United States*, 328 U.S. 750, 764-65 (1946); *United States v. Alviso*, 152 F.3d 1195, 1199 (9th Cir. 1998). The erroneous admission of a prior conviction is harmless if the government "provid[es] a 'fair assurance' that the error did not substantially sway the verdict." *Id.* (quoting *Hernandez*, 109 F.3d at 1453). We hold that this standard was met in this case. Here, the district court instructed the jury to consider the four Oklahoma convictions for the sole purpose of determining whether Weiland was a felon within the meaning of § 922(g)(1). *United States v. Holler*, 411 F.3d 1061, 1067 (9th Cir. 2005). *But see Hernandez*, 109 F.3d at 1453. Given the strong evidence that Weiland had been convicted of at least one count of Second Degree Burglary in Oklahoma in 1976 and that he had been in possession of firearms and ammunition that traveled in interstate commerce, we conclude that the jury would have reached the same verdict even absent the erroneously admitted superfluous convictions. *See Alviso*, 152 F.3d at 1199.

## V

Weiland argues that the four Oklahoma Second Degree Burglary convictions should not have been used to enhance

his sentence under the Armed Career Criminal Act because the government did not establish that he was convicted of four crimes that included the elements of generic burglary.[15] We reject this argument, applying the modified categorical approach. Here, the government produced an Information and Judgment and Sentence on Plea of Guilty for each of the four Oklahoma Second Degree Burglary convictions. We have previously approved the use of these exact Oklahoma documents under the modified categorical approach, *United States v. Bonat*, 106 F.3d 1472, 1477-78 (9th Cir. 1997), and the United States Supreme Court recently cited our approach in *Bonat* with approval, *Shepard v. United States*, 125 S. Ct. 1254, 1260 n.3 (2005). Each Oklahoma Information establishes that Weiland committed an offense that met the elements of generic burglary: an "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Taylor*, 495 U.S. at 599. We hold that the district court correctly determined that the government established that Weiland committed generic burglary under the modified categorical approach.

## VI

Weiland maintains that his 188-month sentence under the Armed Career Criminal Act is constitutionally infirm on the theory that it violates the jury trial requirement of the Sixth Amendment. Although Weiland did not raise this argument in the district court, we consider it because it presents a purely legal question and the factual record below has been fully developed. *United States v. Reyes-Alvarado*, 963 F.2d 1184, 1189 (9th Cir. 1992).

[19] Weiland's argument is foreclosed by *Almendarez-*

---

[15]We review de novo a district court ruling that the government presented documents sufficient to establish the elements of generic burglary under the modified categorical approach. *United States v. Franklin*, 235 F.3d 1165, 1169 (9th Cir. 2000).

*Torres v. United States*, 523 U.S. 224, 247 (1998), in which the Supreme Court held that a district court may enhance a sentence on the basis of prior convictions, even if the fact of those convictions was not found by a jury beyond a reasonable doubt.[16] We accordingly leave intact the 188-month sentence Weiland received pursuant to the Armed Career Criminal Act, 18 U.S.C. § 924(e).

## VII

[20] Weiland finally argues that the district court erred in declining to adjust downward for acceptance of responsibility under U.S.S.G. § 3E1.1.[17] This argument lacks merit. When a

---

[16]Although recent Supreme Court jurisprudence has perhaps called into question the continuing viability of *Almendarez-Torres*, *see, e.g.*, *Shepard*, 125 S. Ct. at 1263-64 (Thomas, J., concurring), we are bound to follow a controlling Supreme Court precedent until it is explicitly overruled by that Court. *Agostini v. Felton*, 521 U.S. 203, 258 (1997) (Ginsburg, J., dissenting); *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."); *United States v. Pacheco-Zepeda*, 234 F.3d 411, 414 (9th Cir. 2000) ("Unless and until *Almendarez-Torres* is overruled by the Supreme Court, we must follow it.").

[17]We review for clear error a district court decision not to adjust downward for acceptance of responsibility under U.S.S.G. § 3E1.1. *Nielsen*, 371 F.3d at 582; *United States v. Velasco-Medina*, 305 F.3d 839, 853 (9th Cir. 2002); *United States v. Melvin*, 91 F.3d 1218, 1227 (9th Cir. 1996). Although a few Ninth Circuit opinions suggest that we lack jurisdiction to review a district court decision not to grant a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1, *see, e.g.*, *United States v. Bauer*, 84 F.3d 1549, 1562 (9th Cir. 1996); *United States v. Eaton*, 31 F.3d 789, 792-93 (9th Cir. 1994), these opinions do not reflect the overwhelming weight of the case law in this circuit supporting our rule that we can review a decision not to adjust downward for acceptance of responsibility. The few cases looking in the other direction appear to be misapplying the general rule that we do not have jurisdiction to review a district court's discretionary denial of downward departure. *See, e.g., Eaton*, 31 F.3d at 792 (citing *United States v. Morales*, 898 F.2d 99, 103 (9th Cir. 1990)).

defendant chooses to put the government to its burden of proof at trial, a downward adjustment for acceptance of responsibility should be "rare." U.S.S.G. § 3E1.1 cmt. n.2. Appropriate downward adjustments for acceptance of responsibility after trial might include when a defendant challenges the constitutionality of a criminal statute, or other like circumstance. *Id.* In this case, Weiland challenged the admissibility of his four underlying Oklahoma criminal convictions and actively contested other aspects of the government's case. We hold that the district court did not clearly err in denying Weiland a downward sentencing adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1.

**AFFIRMED.**

TASHIMA, Circuit Judge, dissenting:

Regretfully, I must dissent from the majority's holding that the records of Weiland's prior convictions were admissible, because "the records were properly authenticated because the documents in the 'penitentiary packet' were self-authenticating public records admissible under Rules 902(2) and 902(4)." Maj. op. at 11324. Respectfully, I suggest that the record in this case cannot support the weight of that conclusion.

Richard E. Greene is the manager of the Offender Records Unit, Oklahoma Department of Corrections. In that capacity, he certified the records of Weiland's prior convictions at issue in this case. In material part, his certification stated:

> that in my legal custody as such officer, are the original files and records of persons heretofore committed to the Department of Corrections; that the 1) fingerprint card, 2) photograph, and 3) commitment documents attached are copies of the original records

of persons heretofore committed to said Department of Corrections, and who served a term of incarceration/supervision therein; that I have compared the foregoing and attached copies with their respective originals now on file in my office and each thereof contains and is a full, true and correct copy from its said original.

Although the foregoing certification would be sufficient to meet the requirements of Rule 902(2) and (4) if it were considered in isolation, as the majority does, the problem in this case is that stapled to Greene's certification is a "facsimile transmittal," which contradicts the material representations made in the certification. The majority, without any analysis whatsoever, dismisses this facsimile out of hand in one sentence: "The facsimile included in the 'penitentiary packet,' apparently from Greene's office to Paula Menifee in the OSBI, does not change our analysis."[18] Maj. op. at 11325. I do not believe that the facsimile can be dealt with in such an offhand and facile manner — that is, virtually ignored.

The facsimile transmission stapled to Greene's certification is a fax from Paula Menifee, an employee of Greene's unit, Offender Records, to the Oklahoma State Bureau of Investigation (the "Menifee Fax").[19] The text of the Menifee Fax states: "Please send (BY MAIL ONLY) legible copies of any *fingerprints, photographs, and rap sheets* on the following individuals:" (Emphases in the original.) Listed below the text is Weiland's name, his date of birth, Department of Correc-

---

[18]As I show immediately below, the majority is mistaken in assuming that the facsimile was sent "from Greene's office to Paula Menifee in the OSBI." In fact, Menifee is an employee of Greene in the Offender Records Unit.

[19]Menifee identifies herself as being with "Offender Records." The fax letterhead shows the same address for Menifee's "Offender Records" office — 3400 Martin Luther King Avenue, Oklahoma City — as the address for Greene's "Offender Records Unit," shown below his signature on the certification.

tions number, OSBI number [listed as "unknown"], FBI number, and Social Security number.

Several things are obvious from the Menifee Fax. First, Greene does not have custody of "the original files and records." If he did, he (or Menifee on his behalf) would not have to request the records from OSBI. Second, if Greene had to obtain "legible copies" of the records from OSBI, he could not have "compared the . . . copies with their respective originals." Third, not having the ability to make a comparison with the originals, Greene had no basis for certifying that the copy is "full, true, and correct." In sum, the Menifee Fax demonstrates that Greene, in fact, was not the custodian of the records which he purported to certify.

Further corroborating the Menifee Fax's implicit conclusion that Greene was not the custodian is the further fact that the Menifee Fax was not addressed only to the Oklahoma State Bureau of Investigation, but jointly to "OSBI-NCIC." Presumably, the fax was so addressed because "State law enforcement agencies [*i.e.*, OSBI] are connected to NCIC through their computer systems," *Case v. Kitsap County Sheriff's Dep't*, 249 F.3d 921, 924 (9th Cir. 2001), and going through OSBI was the way that Greene's Offender Records Unit could access the NCIC database. We briefly described NCIC in *Case*, as follows: "[T]he National Crime Information Center computer system ('NCIC') . . . is a national criminal records data system administered by the Federal Bureau of Investigation. *See* 28 U.S.C. § 534. NCIC contains criminal history information, including outstanding warrants, and is available to police departments nationwide." *Id.* at 923. If Greene was, in fact, the custodian of these records, we can only speculate why Greene, through Menifee, found it necessary to inquire of the NCIC about Weiland's criminal records.

In short, the Menifee Fax raises a number of troubling questions. Indeed, without a satisfactory explanation of those questions, it completely destroys the reliability of Greene's

certification. Because the certification, on this record, is demonstrably unreliable, the records it purports to certify should not have been admitted under Rules 902(2) and 902(4), and Weiland's conviction should be reversed.